## Division 85 of Amalgamated Transit Union v. Port Authority of Allegheny County

*Joseph J. Pass, Jr.,* for plaintiffs.
*Henry J. Wallace, Jr.,* for defendants.

FINKELHOR, *J.,* June 26, 1978—The above matter, designated a class action, came before the court on preliminary objections to plaintiffs' complaint in assumpsit, filed in March 1977, to recover moneys withheld from wages of members of Division 85 of the Amalgamated Transit Union and employes of defendant, Port Authority of Allegheny County. Said deductions were made by defendant and employer, Port Authority, to recover premiums paid on group accident and sick insurance policies during a work stoppage.

It is defendant's position (1) that jurisdiction is with the Pennsylvania Labor Relations Board; (2) plaintiffs have failed to allege a contract governing the cause of action; and (3) the action is improperly filed as a class action.

Briefly, plaintiff seeks to recover said deductions made by the employer for a five-day period from December 1, 1976, through December 5, 1976, when the employes were engaged in a strike. The action is brought in the name of the union, an unincorporated association, and David Jones on behalf of all members of Local 85 subject to the deduction.

Plaintiffs base their cause of action on the prior collective bargaining agreement, which expired November 30, 1976, and the Pennsylvania Wage Collection Act of July 19, 1951, P.L. 1074, 40 P.S. §539 et seq.

It is defendant's contention that, as the collective bargaining agreement had expired, it no longer governed the relations between the parties and

that, under the specific language of the Public Employes Labor Relations Act, an employe is not entitled to pay or compensation for the period of a work strike: Act of July 23, 1970, P.L. 563, 43 P.S. §1101.1006.

The Pennsylvania Labor Relations Board has ruled that, pursuant to section 1006 of the Public Employes Act, fringe benefits, as well as wages and salaries, may be terminated during a period of a work stoppage: Hazleton Area Board of School Directors, 7 P.P.E.R. 234 (1976). We agree with the Pennsylvania Labor Board that the language of the Public Employes Act is clear and that the employer may terminate Blue Cross, Blue Shield and other forms of health and accident insurance during a strike period.

Therefore, the issue in these proceedings is not whether striking employes are entitled to fringe benefits during the period of a strike but whether an employer who has volunteered payments for insurance coverage may then deduct the amount of the payments from subsequent wages and salaries.

The Pennsylvania Wage Payment and Collection Law of July 14, 1961, P.L. 637, as amended, 43 P.S. §260.1 et seq.,* specifically provides for the timely

---

*Section 260.3(b) of the act provides for the payment of fringe benefits as follows: "(b) Fringe benefits and wage supplements. Every employer who by agreement deducts union dues from employes' pay or agrees to pay or provide fringe benefits or wage supplements, must remit the deductions or pay or provide the fringe benefits or wage supplements, as required, within 10 days after such payments are required to be made to the union in case of dues or to a trust or pooled fund, or within 10 days after such payments are required to be made directly to the employe, or within 60 days of the date when proper claim was filed by the employe in situations where no required time for payment is specified." Amended July 14, 1977, P.L. 82.

payment of wages duly earned and includes fringe benefits or wage supplements. While third party insurance benefits are not specifically covered, there is no authorization in the statute for deductions by the employer.

In addition, in the case of government employes, the Act of July 19, 1951, P.L. 1074, 40 P.S. §539, specifically provides for written authorization from the employe to authorize deductions for group insurance covering life, health, hospitalization, medical, osteopathic or dental service. Section 539 specifically states as follows:

"Any officer or officers of the Commonwealth of Pennsylvania or its departments, boards, commissions and agencies, or of any political subdivision thereof, whose duty it is or may be to make payments or disbursements in the form of salaries, wages or other compensation to any elected or appointed officer or employe, shall, *upon receipt of written authorization* from any such officer or employe so to do, withhold from the salary, wages or other compensation to be paid any such officer or employe, any premium or other charge due from such officer or employe for group insurance covering life, health, hospitalization, medical, osteopathic, or dental service, or accident insurance, pursuant to any contract with any insurance company, or nonprofit hospitalization corporation, or nonprofit medical, osteopathic or dental service corporation authorized to transact business with the Commonwealth." (Emphasis supplied.)

We believe that, pursuant to the terms of these statutory provisions and regardless of the good will of the employer, deductions for fringe health and insurance benefits may only be made after specific authorization by the employe. Conceivably, de-

fendant may have wished to protect employes against loss of insurance coverage, but proper motive is not sufficient to change long standing policy against unauthorized deductions.

Therefore, the matter at issue is not an unfair labor practice within the jurisdiction of the Pennsylvania Labor Relations Board but whether the employes of the authority authorized the deductions of insurance payments from their pay checks. Therefore, plaintiffs have stated a cause of action.

The second issue raised by defendant relates to the status of a suit brought both by an unincorporated association and as a class action. The action was filed by Division 85, an unincorporated association, and Wade L. Welsh, president and trustee ad litem (Pa.R.C.P. 2152), and by David Jones as a representative of all other employes of a class similarly situated under former Pa.R.C.P. 2230 (class actions). Effective September 1, 1977, Rule 2230 was revoked and a detailed new procedure for class actions was adopted in Pa.R.C.P. 1701 et seq.

While the effective date of the new rule is after the filing of this suit (March 1977), we believe that the resolution of this dispute would be more expeditious under the new procedure for the determination of the appropriate class—i.e., after the filing of an answer: Pa.R.C.P. 1706, 1707. Cf. Bell v. Beneficial Consumer Discount Co., 241 Pa. Superior Ct. 192, 360 A. 2d 681 (1976). However, under either procedure, plaintiffs have failed to allege the status of Division 85, an unincorporated association, as a member of the affected class or in the alternate the standing of the division as a party in these proceedings: Pa.R.C.P. 2152. Obviously, there is a substantial difference between an action brought by an unincorporated association on behalf

of its members and a true class action which binds individuals not personally appearing before the court. Leave will be granted to plaintiffs to clarify these matters in the complaint.

Based upon the above discussion, defendants' preliminary objections are denied and an appropriate order is attached hereto.

### ORDER OF COURT

And now, June 26, 1978, upon preliminary objections of defendants and after full consideration of the arguments and briefs of counsel, it is hereby ordered, adjudged and decreed that said preliminary objections in the nature of a demurrer are denied.

It is further ordered that plaintiffs are granted 20 days to amend the complaint, specifically paragraph 6, to set forth the basis of the class action in these proceedings.